AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Brendan Kelly Fitzpatrick | ) | Case No. 3:22mj115 |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **September 8, 2022** in the county of **City of Richmond** in the **Eastern** District of **Virginia**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | to wit, did knowingly and intentionally distribute a mixture and substance containing a detectable amount of cocaine hydrochloride, a Schedule II controlled substance. |

This criminal complaint is based on these facts:
see attached affidavit, incorporated by reference herein.

☑ Continued on the attached sheet.

Reviewed by AUSA/SAUSA:
AUSA Olivia L. Norman

*Complainant's signature*

Matthew J. Rubright, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 21, 2022

/s/ David J. Novak
United States District Judge
*Judge's signature*

City and state: Richmond, Virginia

David J. Novak, US District Judge
*Printed name and title*

## **AFFIDAVIT IN SUPPORT OF**
## **A CRIMINAL COMPLAINT**

I, Matthew J. Rubright, being duly sworn, depose and state as follows:

## **INTRODUCTION**

1. Your Affiant is a Special Agent with the Drug Enforcement Administration ("DEA") and has been employed as a Special Agent since January 2, 2022. Your Affiant attended and graduated from the sixteen-week DEA Basic Agent Training Academy at Quantico, Virginia. At the DEA training academy, your affiant received training in methods and techniques utilized by illegal drug traffickers to avoid detection by law enforcement, illicit drug identification, surveillance techniques, arrest procedures, undercover operations, safe and effective execute of search warrants, evidence procedures, among other topics. Since graduating from the DEA Academy, your affiant has participated in enforcement operations consisting of surveillance, execution of arrest and search warrants, undercover operations, confidential source management, and evidence processing that have resulted in the seizure of illicit narcotics and firearms, and the arrest and indictment of illegal drug traffickers in the Commonwealth of Virginia.

2. I submit this affidavit in support of Criminal Complaint charging Brendan Kelly FITZPATRICK with distribution of cocaine hydrochloride, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

3. The facts in this affidavit come from my personal observations, my training and experience, and credible information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested Criminal Complaint and does not include all information known to me or the government.

## PROBABLE CAUSE

4.  DEA is investigating the drug and firearm distribution activities of Brendan Kelly FITZPATRICK, and others in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c). In September 2021, state and federal law enforcement officers, including DEA agents and taskforce officers (collectively "agents") received information that FITZPATRICK was distributing illegal controlled substances. Through the development of cooperating individuals, agents learned that FITZPATRICK is from Crozet, Virginia and is attending college at William & Mary, in Williamsburg, Virginia. Through the use of these cooperators, agents made purchases of cocaine hydrochloride directly from FITZPATRICK.

5.  After agents utilized a cooperator to make two controlled purchases of cocaine hydrochloride from FITZPATRICK, agents had the cooperator introduce your affiant in an undercover capacity ("UC") to FITZPATRICK for purposes of making additional controlled purchases of cocaine hydrochloride from FITZPATRICK.

6.  Once introduced, the UC and FITZPATRICK discussed the future purchase of cocaine from FITZPATRICK and the possibility of purchasing other controlled substances. FITZPATRICK offered the UC marijuana and cocaine and discussed prices for one-time purchases and dealer prices for people who would be willing to sell controlled substances on a regular basis for FITZPATRICK. FITZPATRICK told the UC that it was $1,600 for a one-time purchase of an ounce of cocaine and $1,500 for returning customers and those who were willing to sell cocaine for FITZPATRICK. FITZPATRICK gave the UC his Telegram App username (BRAVO6) for the UC to use to contact FITZPATRICK to coordinate future buys.

7. Between August 16, 2022, and September 8, 2022, the UC and FITZPATRICK discussed and coordinated the purchase of one ounce of cocaine for $1,600 over the Telegram App. During these text discussions, the UC expressed concern about a friend who was dealing and got robbed. FITZPATRICK suggested that the UC and his friend needed "Glocks," referring to pistols. During these discussions, FITZPATRICK asked the UC how much cocaine the UC would be able to sell if the UC ramped things up. The UC told FITZPATRICK the UC would be willing to sell larger amounts of cocaine for FITZPATRICK and the UC wanted to purchase a firearm. FITZPATRICK asked the UC if a .380 would work and then quoted the UC the price of $500 for a 9-millimeter pistol.

8. On September 8, 2022, the UC contacted FITZPATRICK over the Telegram App to coordinate the time and location of the purchase of 1 ounce of cocaine and a 9mm pistol. FITZPATRICK told the UC that he had everything and that FITZPATRICK could meet the UC in Richmond, in the vicinity of Virginia Commonwealth University at 5:00 p.m. Agents located FITZPATRICK's gold Ford Taurus on the William & Mary campus prior to the buy and maintained surveillance on FITZPATRICK's gold Ford Taurus, and FITZPATRICK'S dorm room. Prior to the buy, agents observed FITZPATRICK entering his dorm room, and exiting the dorm room with two bags. Agents observed FITZPATRICK place one of the bags in the trunk and one bag in the passenger compartment of FITZPATRICK's gold Ford Taurus. Agents observed FITZPATRICK travel to a Walmart store in the Williamsburg area, where FITZPATRICK entered the store. A short while later FITZPATRICK exited the Walmart in possession of a black tool bag with red markings. FITZPATRICK entered his gold Ford Taurus and drove to the prearranged meet location in Richmond, Virginia. Agents witnessed FITZPATRICK exit the vehicle carrying the newly purchased black bag and enter the UC's

vehicle. Once in the UC's vehicle, FITZPATRICK opened the black tool bag and showed the UC the pistol and the suspected cocaine without removing the items from the bag. The UC gave FITZPATRICK $1600 for the cocaine and $500 for the pistol. FITZPATRICK gave the UC the black bag that contained 1 ounce of suspected cocaine and a 9mm firearm.

9. The UC delivered the firearm and the suspected cocaine hydrochloride that FITZPATRICK had distributed to the UC to awaiting agents. The suspected cocaine hydrochloride was field tested and tested positive for cocaine. An inspection of the 9mm pistol revealed that one of the serial numbers had been obliterated and another one of the serial numbers had scratches on it consistent with an attempt to remove that serial number. Further investigation revealed that FITZPATRICK purchased the 9mm pistol earlier that day from a pawn shop in Norfolk, Virginia. According to a pawn shop employee, none of the serial numbers on the 9mm pistol were obliterated or altered when the pistol was sold to FITZPATRICK earlier in the day.

10. Following the controlled buy on September 8, 2022, FITZPATRICK continued to contact the UC to arrange another distribution of cocaine. During these communications, FITZPATRICK messaged that he had cocaine and pills available for purchase and set up a deal for October 20, 2022, which was later changed to October 21, 2022, in Williamsburg, Virginia. On October 21, 2022, agents arrested FITZPATRICK who was in possession of 2 ounces of suspected cocaine hydrochloride and approximately 93 pressed counterfeit pills, which FITZPATRICK intended to sell to the UC according to FITZPATRICK'S communications with the UC. FITZPATRICK also possessed a pistol in the front pocket of his pants.

## CONCLUSION

11. Based on the foregoing, there is probable cause to believe that on September 8, 2022, in the Eastern District of Virginia, Brandon Kelly FITZPATRICK did knowingly and intentionally distribute a mixture and substance containing a detectable amount of cocaine hydrochloride, a Schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1).

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Matthew J. Rubright
Special Agent
Drug Enforcement Administration

Sworn and attested to before me this 21 day of October, 2022, in Richmond, Virginia.

/s/
David J. Novak
United States District Judge